# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### ON MOTION FOR REHEARING

### NO. 03-22-00233-CV

**Bellingham Enterprises, LLC, Appellant**

**v.**

**Colby Constructors, LLC; Travis County Commissioners Court; Andy Brown in his Official Capacity as County Judge; Margaret Gómez in her Official Capacity as County Commissioner; Ann Howard in her Official Capacity as County Commissioner; Brigid Shea in her Official Capacity as County Commissioner; and Jeff Travillion in his Official Capacity as County Commissioner, Appellees**

---

**FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-21-003396, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment dated October 13, 2022, and substitute the following in their place. The motion for rehearing filed by appellant Bellingham Enterprises, LLC (Bellingham) is granted in part.

Bellingham filed suit against the Travis County Commissioners Court and its individual Commissioners (collectively, the County Defendants) along with Colby Constructors, LLC, after the Commissioners Court entered an order vacating a drainage easement (the Order of Vacation or the Order). The vacated drainage easement ran entirely on a lot owned by Colby Constructors (Colby's Lot) and bordered a lot owned by Bellingham (Bellingham's Lot).

Bellingham sought a declaration that the Commissioners Court acted ultra vires and that the Order is void. Bellingham also sought an injunction to prevent Colby Constructors from building on Colby's Lot.

The County Defendants and Colby Constructors filed jurisdictional challenges, asserting that Bellingham lacks standing to bring its claims and that any potential claim is not ripe. In separate orders signed on the same day, the trial court granted both challenges and dismissed all of Bellingham's claims for lack of jurisdiction. On appeal, Bellingham asserts that the trial court erred in granting the jurisdictional challenges. We will modify the trial court's order to reflect that the dismissals are "without prejudice," and affirm as modified.

## BACKGROUND

In September 2020, Colby Constructors purchased Colby's Lot, a parcel of land with a bluff overlooking Lake Travis and sloping downward and extending into Lake Travis. Colby's Lot is part of the George Family Partnership Subdivision plat, recorded in 2000. At the time of recording, the subdivision was located within the City of Austin's extra-territorial jurisdiction. Among other things, the subdivision plat dedicated a twenty-five-foot drainage easement that ran on Colby's Lot and along the property line bordering Bellingham's Lot (the Drainage Easement). According to Bellingham's pleadings, "[t]he Drainage Easement runs along the entirety of the common boundary line between [Colby's Lot] and [Bellingham's Lot], from Reed Park Road (a public right-of-way), over and across [Colby's Lot], to its terminus at Lake Travis." Bellingham's Lot is uphill from Colby's Lot, and no portion of the Drainage Easement is, or ever has been, located on Bellingham's Lot.

Before purchasing Colby's Lot, Colby Constructors began researching whether the Drainage Easement could be removed, with the objective of constructing a residence on the property. As part of that process, it hired an engineering firm to determine if the Drainage Easement served a current purpose and whether there was a basis for requesting that it be vacated. On December 11, 2020, Jason Rodgers, a professional engineer with Bleyl Engineering, submitted a letter and supporting materials to Travis County, Transportation and Natural Resources Department, explaining that "he had reviewed the topography of the land, and it appears that the drainage easement serves no current purpose." Based on Rodgers's findings, Colby Constructors requested that the County vacate the Drainage Easement to the extent it crossed Colby's Lot.

Following notice and a public hearing, the issue of whether to approve Colby Constructors's request to vacate the Drainage Easement was presented to the Commissioners Court at its May 25, 2021 meeting. The Transportation and Natural Resources Department informed the Commissioners Court that its staff had reviewed the drainage study provided with the application to vacate and that the request met all applicable Travis County standards. That same day, the Commissioners Court signed the Order of Vacation, removing that portion of the Drainage Easement that ran on Colby's Lot.

On July 23, 2021, Bellingham filed suit to prevent construction on Colby's Lot, claiming that the Commissioners Court acted ultra vires when it vacated the Drainage Easement. In its petition, Bellingham states, "[N]o portion of [Colby's Lot] or the Drainage Easement was then, or is now, within Travis County's jurisdiction for purposes of subdivision and platting approvals." "To the contrary," Bellingham alleges, "the City of Jonestown annexed portions of [Colby's Lot] into the city's extraterritorial jurisdiction in 2005/2006 . . . and the remainder of

3

[Colby's Lot] was annexed into the city's full-purpose jurisdiction in 2011 by City Ordinance." Thus, Bellingham reasons, the Commissioners Court had no authority to vacate the Drainage Easement and Colby Constructors cannot legally construct on Colby's Lot until it obtains "requisite approval" from the City of Jonestown.

The County Defendants filed a plea to the jurisdiction, and Colby Constructors filed a motion to dismiss for lack of jurisdiction. In their respective jurisdictional challenges, the County Defendants and Colby Constructors argued that Bellingham lacks standing to challenge the Order of Vacation because it does not affect any property rights held by Bellingham and that any potential claim is not ripe because the requested relief will not resolve any actual controversy between the parties. Following a non-evidentiary hearing, the trial court granted both jurisdictional challenges and dismissed all of Bellingham's claims.[1] On appeal, Bellingham challenges each of the grounds raised, including standing and ripeness.

---

[1] Bellingham contends that the trial court did not dismiss all of its claims against Colby Constructors and that this is an interlocutory appeal. Specifically, Bellingham argues that the trial court did not consider its claim for attorney's fees under the Uniform Declaratory Judgments Act (UDJA) and that this claim remains pending. *See* Tex. Civ. Prac. & Rem. Code § 37.009.

In its order granting Colby Constructors's motion to dismiss, the trial court states that it "hereby granted" Colby Constructors's "Amended Motion to Dismiss all of the claims filed by [Bellingham]" and that "[Bellingham's] suit against Colby [Constructors] is dismissed with prejudice." Similarly, the same day, the trial court signed the order granting the County Defendants' plea to the jurisdiction and stating that "all of the claims against the County Defendants alleged by Plaintiff are hereby dismissed with prejudice." As Bellingham points out, neither order contains the "magic language" for establishing finality as set out in *Lehmann v. Har-Con, Corp.*, 39 S.W.3d 191, 206 (Tex. 2001) (concluding that judgment containing statement like "[t]his judgment finally disposes of all parties and claims and is appealable" must be treated as final for purposes of appeal). However, because neither Colby Constructors nor the County Defendants have asserted any claims in this dispute, we conclude that the orders, taken together, actually dispose of all pending claims and parties, including any claim that Bellingham may have had for attorney's fees under the UDJA. *See id.* at 204 ("[A]n order can be a final judgment for appeal purposes even though it does not purport to be if it actually disposes of all claims pending in the case.").

4

**BACKGROUND LAW**

Standing is a component of subject-matter jurisdiction, *Teal Trading & Dev., L.P. v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 338 (Tex. 2020), and "focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome," *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). The standing requirement "derives from the Texas Constitution's separation of powers among the departments of government, which denies the judiciary authority to decide issues in the abstract, and from the Open Courts provision, which provides court access only to a 'person for an injury done him.'" *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). Under Texas law, standing requires a "concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson Cty*., 369 S.W.3d 137, 154 (Tex. 2012).

The standing inquiry begins by determining whether the plaintiff has been *personally* injured, and the plaintiff must plead facts sufficient to show that it—rather than a third party or the public at large—suffered the injury. *Id.* at 155. Generally, "a citizen lacks standing to bring a lawsuit challenging the lawfulness of governmental acts." *Andrade v. NAACP of Austin*, 345 S.W. 3d 1, 7 (Tex. 2011). Unless standing is conferred by statute, "a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Sneed v. Webre*, 465 S.W.3d 169, 180 (Tex. 2015). As to the injury itself, it "must be concrete and particularized, actual or imminent, not hypothetical." *Heckman*, 369 S.W.3d at 155 (quoting *Inman*, 252 S.W.3d at 304-05).

5

Another component of subject-matter jurisdiction is ripeness. *Southwestern Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 682 (Tex. 2020). Like standing, ripeness emphasizes the need for a concrete injury to have a justiciable claim. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). The ripeness inquiry focuses on when the action may be brought, rather than on who may bring it, and seeks to conserve judicial time and resources for real and current controversies rather than hypothetical or remote disputes. *Id.* The plaintiff must show that "at the time a lawsuit is filed, the facts are sufficiently developed 'so that injury has occurred or is likely to occur, rather than being contingent or remote.'" *Patel v. Texas Dep't of Licensing & Regul.*, 469 S.W.3d 69, 75-76 (Tex. 2015) (quoting *Gibson*, 22 S.W.3d at 851-52). A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass. *Gibson*, 22 S.W.3d at 851.

## STANDARD OF REVIEW

Subject-matter jurisdiction is essential to the authority of a court to decide a case, *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993), and may be challenged by a plea to the jurisdiction, as well as other procedural vehicles, such as a motion for summary judgment,[2] *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *see Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019) (concluding that jurisdiction may

---

[2] Although Colby Constructors labeled its jurisdictional challenge as a "motion to dismiss for lack of jurisdiction," in the body of its motion, it refers to the legal standard applicable to pleas to the jurisdiction. On review, we will treat the motion to dismiss as a plea to the jurisdiction. *See Lazarides v. Farris*, 367 S.W.3d 788, 797 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (applying standard of review for pleas to the jurisdiction to review of denial of motion for summary judgment challenging jurisdiction); *Pickett v. Texas Mut. Ins.*, 239 S.W.3d 826, 839 (Tex. App.—Austin 2007, no pet.) (treating motion to dismiss based on lack of jurisdiction as "functional equivalent of a plea to the jurisdiction").

be challenged by no-evidence motion for summary judgment).  Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo.  *City of Austin v. Travis Cent. Appraisal Dist.*, 506 S.W.3d 607, 612 (Tex. App.—Austin 2016, no pet.).

The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction.  *Heckman*, 369 S.W.3d at 139.  When a plea to the jurisdiction challenges the pleadings, the court reviews the pleadings to determine whether the plaintiff has met its initial burden to allege facts that affirmatively demonstrate subject-matter jurisdiction.  *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).  In making this determination, the court will construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent*.  Texas Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020).  However, "[m]ere unsupported conclusions do not suffice."  *Bacon v. Texas Hist. Comm'n*, 411 S.W.3d 161, 170 (Tex. App.—Austin 2013, no pet.).

If the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court considers the relevant evidence submitted by the parties to resolve the jurisdictional issue.  *Farmers Texas Cty. Mut. Ins. v. Beasley*, 598 S.W.3d 237, 241 (Tex. 2020); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.  How the trial court analyzes that evidence depends on whether the jurisdictional facts implicate the merits of the plaintiff's case.  *See University of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.).  When the disputed jurisdictional facts *do not* implicate the merits of the case, the trial court must make the necessary fact findings to resolve the jurisdictional issue.  *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015).  These underlying fact findings, express or implied, may be challenged for legal and factual sufficiency.  *Poindexter*, 306 S.W.3d at 806-07; *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795-96 (Tex. 2002) (noting that when trial

7

court decides disputed fact questions but does not issue findings of fact and conclusion of law, "all facts necessary to support the judgment and supported by the evidence are implied"). In contrast, when the challenged jurisdictional facts *do* implicate the merits of the plaintiff's claims, the party asserting the plea must overcome a burden similar to a movant's burden on a traditional summary-judgment motion and conclusively negate those facts, which we would otherwise presume to be true. *Id.* If the evidence creates a fact question on the jurisdictional issue, the plea must be denied, and the fact issue will be resolved by the fact finder. *Miranda*, 133 S.W.3d at 227-28.

## ANALYSIS

In its plea to the jurisdiction, the County Defendants argued that Bellingham lacks standing to challenge the Order of Vacation because it concerns an easement located entirely on property not owned by Bellingham and because any impact on Bellingham's property rights in the future is entirely speculative and contingent on uncertain events. Similarly, in its motion to dismiss for lack of jurisdiction, Colby Constructors argued, in part, that Bellingham lacks standing to challenge the Order because it is not a party to the Order and it has "no protectable property rights that are impacted."

In its response to the jurisdictional challenges, and now on appeal, Bellingham asserts that the plat for the George Family Partnership Subdivision specifically dedicated the easement to the public for the purpose of drainage and that a cause of action exists when a private landowner seeks to obstruct publicly dedicated land with an improper use. In support of its argument, Bellingham cites *Brooks v. Jones*, 578 S.W.2d 669, 674 (Tex. 1979). In that case, the Texas Supreme Court recognized that a private landowner has standing to enforce a public

8

dedication if the landowner has a property interest that will suffer if the publicly dedicated land is obstructed. *Id.*; *Stein v. Killough*, 53 S.W.3d 36, 40 (Tex. App.—San Antonio 2001, no pet.). Here, there is no dispute that the Drainage Easement is a public dedication and that Bellingham has a property interest in Bellingham's Lot. Consequently, whether Bellingham has standing to challenge the Commissioners Court's decision to vacate the Drainage Easement on Colby's Lot turns on whether it met its burden to show that Bellingham's Lot has suffered an actual or imminent injury as a result of that decision.

In its pleadings, Bellingham alleges that its property interest in Bellingham's Lot will suffer because the "vacation of the Drainage Easement has or will imminently cause a diminution in the value of its property." In addition, Bellingham alleges that "the drainage patterns affecting [Bellingham's Lot] may be adversely affected by Colby's construction on [Colby's Lot] within the Drainage Easement." In their jurisdictional challenges, however, the County Defendants and Colby Constructors challenged these allegations and presented evidence showing that the Drainage Easement serves no purpose, primarily relying on Rodgers's letter to Travis County. In his letter to Travis County, the professional engineer explained that (1) based on the topography of the land, the Drainage Easement serves no current purpose; (2) the Drainage Easement was placed on the plat for the sole purpose of satisfying a "comment from the City of Austin engineering reviewer based on the City's Land Development Code," the property is no longer in the City of Austin, and the Code no longer applies; and (3) drainage patterns and flow rates will not change after the removal of the Drainage Easement. In support of his determinations, Rodgers submitted a topographical map that, according to Rodgers, shows that "[s]urface runoff from the adjacent property sheets flows across the easement and the adjacent lots." In other words, the maps show that the Drainage Easement does not actually

channel the surface water flows. Rodgers concluded that, in his professional engineering opinion, "the removal of the easement would have no negative impact on adjacent properties."

Bellingham argues that Rodgers's letter fails to establish that removal of the easement will not harm Bellingham's Lot in the future and that, consequently, the defendants have not met their burden to negate Bellingham's allegations to the contrary. In part, Bellingham contends that the trial court, and now this Court on review, must consider that the purpose of initially requiring compliance with the City of Austin's Land Development Code when the subdivision was platted was to ensure that Colby's Lot would allow for adequate water flow from upstream neighbors (such as Bellingham's Lot) and that, similarly, Travis County Land Development ordinances require the "conveyance of all storm water flowing through the property." Bellingham also argues that Rodgers's conclusion that the Drainage Easement is not necessary to control water flow fails to account for the "effect of obstructing the easement" by future construction or to consider the hundred-year flood plain.

In support of its contentions, Bellingham relies on a letter from a professional engineer, Bruce Melton with Mesa Engineering, which it attached to its response to the motion to dismiss. In his letter, Melton disagrees with Rodgers's opinion that the Drainage Easement no longer serves a purpose and that its removal would have no negative impact on adjacent properties. Melton states that based on his review of the records, the reason the City of Austin required the Drainage Easement on the subdivision plat was to "protect the public (George Family partnership Subdivision) from runoff from [Bellingham's Lot] . . . and from additional runoff and other platted lots and roadways that may drain across [Bellingham's Lot]" and that the purpose for requiring the easement in perpetuity was to "ensure the safety of the future, not the past." According to Melton, "Just because there have been no impacts in the past does not

mean there will be no impacts in the future" as a result of rainfall (such as twenty-five-, fifty-, and hundred-year storms) and potential future development.

Bellingham also relies on an affidavit from Art Donovan, managing director of Bellingham, to support its allegation that it has suffered a pecuniary injury. In his affidavit, which Bellingham attached to its responses to the jurisdictional challenge, Donovan states that in his capacity as managing director, "he is personally familiar with the Bellingham property and its fair market value" and that "[n]ow that the drainage easement has been vacated by the Travis County Commissioners Court, the value of the property has decreased." Bellingham argues that this evidence is undisputed and sufficient, standing alone, to demonstrate that it has suffered a concrete injury. *See Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 159 (Tex. 2012) (explaining that property owner may provide opinion testimony as to property value). We disagree. Donovan's diminution-in-value opinion assumes that before its removal, the Drainage Easement was necessary to protect adjacent properties, such as Bellingham's Lot. Because the necessity of the Drainage Easement is a disputed jurisdictional fact, Bellingham's evidence of the property's diminished value, standing alone, is insufficient to confer standing.

In this case, the jurisdictional issue—whether Bellingham has suffered a concrete injury as a result of the Order of Vacation—turns on whether the Drainage Easement is necessary to divert water and whether removal of the Easement negatively impacts adjacent properties, such as Bellingham's Lot. These disputed jurisdictional facts do not implicate the merits of Bellingham's claims for injunctive and declaratory relief, which concern whether the Commissioners Court exceeded its authority in issuing the Order and whether Colby Constructors must obtain approval from another jurisdiction before it can begin construction. Because the trial court concluded that Bellingham lacked subject-matter jurisdiction as to all of

11

Bellingham's claims, but did not issue findings of fact and conclusions of law, we assume that the trial court considered the conflicting evidence and implicitly found that removal of the Drainage Easement will not negatively impact adjacent properties, such as Bellingham's Lot, and that any potential negative impact in the future is too speculative, contingent, or remote to support a justiciable claim. *See Poindexter*, 306 S.W.3d at 806-07 (explaining that when jurisdictional facts do not implicate merits of claim, trial court decides disputed jurisdictional facts); *see BMC Software*, 83 S.W.3d at 796. Upon review of the record, we conclude that the evidence is legally and factually sufficient to support the trial court's implied findings. *See Poindexter*, 306 S.W.3d at 806-07 (explaining that trial court's fact findings, including implied fact findings, may be challenged on appeal for legal and factual sufficiency); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (discussing legal-sufficiency standard); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (discussing factual-sufficiency standard). The trial court did not err in concluding that Bellingham failed to affirmatively demonstrate that its property interest in Bellingham's Lot has suffered a concrete injury as a result of the Commissioners Court's Order vacating the Drainage Easement and that Bellingham lacks standing to bring its claims against the County Defendants and Colby Constructors.[3] The trial court did not err in dismissing Bellingham's claims for lack of jurisdiction.

In the alternative, Bellingham argues that even if the trial court did not err in concluding that it lacked jurisdiction, it erred by dismissing its claims "with prejudice." We agree. A dismissal of an action "with prejudice" acts as a final determination on the merits.

[3] On June 24, 2022, we temporarily stayed the Order of Vacation, pending further order of this Court. We lift the stay and dismiss as moot Bellingham's pending emergency motion for Rule 29.3 relief and, in the alternative, petition for writ of injunction.

*Ab-Tex Bev. Corp. v. Angelo State Univ.*, 96 S.W.3d 683, 687 (Tex. App.—Austin 2003, no pet.). Because the trial court dismissed Bellingham's claims without adjudicating their merit, *see Bland Indep. Sch. Dist.*, 34 S.W.3d at 554 (noting that purpose of plea to jurisdiction is "to defeat a cause action without regard to whether the claims asserted have merit"), and because Bellingham may, in the future, demonstrate an impact on its lot sufficient to confer standing, the trial court's orders of dismissal are modified to delete the phrase "with prejudice" and to substitute in its place the phrase "without prejudice." *Green Tree Servicing, LLC v. Woods,* 388 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("When a plea to the jurisdiction is granted, the case is dismissed without prejudice unless it is established that the plaintiff is incapable of remedying the jurisdictional defect.") (citing *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004))*; see also McMillan v. Aycock*, No. 03-18-00278-CV, 2019 Tex. App. LEXIS 2624, at *9 (Tex. App.—Austin Apr. 3, 2019, no pet.) (mem. op.) (modifying order that dismissed claims for lack of standing to reflect that dismissal was without prejudice). As modified, the orders are affirmed. *See* Tex. R. App. P. 43.2(b).

## CONCLUSION

As modified, we affirm the trial court's dismissal orders, granting the appellees' jurisdictional challenges and dismissing Bellingham's claims for lack of jurisdiction.[4]

---

[4] Bellingham also appeals the orders to the extent the trial court granted the County Defendants' plea to the jurisdiction based on governmental immunity. *See Harris County v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018) (explaining that governmental immunity, similar to sovereign immunity, protects political subdivisions of state from suit and liability). Because we affirm the trial court's order on the ground that Bellingham lacks constitutional standing to bring its claims, we need not decide this issue.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly
   Justice Goodwin not participating

Modified and, as Modified, Affirmed on Motion for Rehearing

Filed:   March 9, 2023

14